UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CLIFFORD DISNEY,

        Petitioner,

v.                             Civil Action No. 12-13828
                                        Honorable Denise Page Hood

JEFFREY LARSON,

        Respondent.

_____/

### OPINION AND ORDER
### (1) DENYING PETITIONER'S MOTION FOR RECONSIDERATION OF THE ORDER DENYING RELEASE ON BOND (dkt. #33), (2) DENYING PETITIONER'S MOTION FOR DISQUALIFICATION (dkt. #34), (3) DENYING THE HABEAS CORPUS PETITION (dkt. #1), AND (4) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

This matter is pending before the Court on a *pro se* habeas corpus petition under

28 U.S.C. § 2254. Petitioner Clifford Disney, a state prisoner at Central Michigan

Correctional Facility in St. Louis, Michigan, is challenging his state convictions for

possession of a controlled substance, Mich. Comp. Laws § 333.7403(2)(b)(ii), and

operating a vehicle while under the influence of a controlled substance, Mich. Comp. Laws

§ 257.625(1)(a). Petitioner raises two Fourth Amendment claims, a challenge to the

sufficiency of the evidence at the preliminary examination, a jurisdictional claim, and a

challenge to the sufficiency of the evidence at trial. He also alleges that he was denied trial

counsel at a critical stage of the proceedings and that his trial and appellate attorneys were

ineffective. Respondent Jeffrey Larson urges the Court through counsel to deny the

petition. The Court has concluded from a review of the pleadings and record that

Petitioner's claims do not warrant habeas relief.  Accordingly, the habeas petition will be denied.

## I.  Background

### A.  The Trial and Direct Appeal

The charges against Petitioner arose from an accident that occurred on an interstate highway in Detroit, Michigan.  Liane Garmany testified at Petitioner's trial in Wayne County Circuit Court that she was driving eastbound on I-94 about noon on February 26, 2005.  She noticed that the man in the small, light-colored car behind her was swerving on the highway.  When the traffic became congested, she slowed down, and the man behind her slammed on his brakes.  The man fish-tailed and hit the left side of her car, which spun around six times.  She pulled over to the side of the road and called the police.  The car behind her had stalled, and she heard the driver trying to start his car.  Then she saw him pull over to the side of the road directly behind her car.  When the police arrived about ten minutes later, she explained what happened.  The officers subsequently talked to the people in the vehicle behind her.

Ms. Garmany identified Petitioner at trial as the driver of the car that hit her car, and she claimed that the man's female companion was seated in the front passenger seat.  She thought that Petitioner was drunk because, when he got out of his vehicle, his balance was not good.

Michigan state trooper Patrick Walter testified that he and Trooper Jack Taeff responded to the accident on I-94 near the Mt. Elliott exit.  After speaking with Ms. Garmany, he approached Petitioner who was attempting to start his vehicle.  Petitioner informed him that the vehicle in front of him had applied its brakes and that he rear-ended

2

the vehicle when he was unable to stop.  Petitioner's speech was slurred, his eyes were glassy, and he had a difficult time maintaining his balance when he got out of the vehicle. He identified himself, but then reached into the pocket of his jacket and produced a prescription bottle bearing the name Jac Simpson.  Petitioner informed Trooper Walter that he was transporting the medication to Mr. Simpson.  Trooper Walter, however, noticed that the bottle contained two different types of medication.  He seized the pills and later placed them in evidence at the state police post.

Continuing, Trooper Walter stated that he gave Petitioner a couple of sobriety tests. Petitioner was unable to recite the alphabet coherently, and he failed to correctly follow Trooper Walter's instructions to count backwards from the number seventy-six to the number sixty-five.  Trooper Walter arrested Petitioner after concluding that Petitioner was under the influence of a controlled substance.

At the state police post, Petitioner refused to submit to a blood test.  Trooper Walter obtained a search warrant for a blood draw, but when he went back to Petitioner's cell, Petitioner was extremely lethargic and unable to rise to his feet.  An ambulance was summoned to transport Petitioner to the hospital where the blood test was completed.

State Trooper Jack Taeff testified that he was working with Trooper Walter on February 26, 2005, and that the two of them responded to the accident at I-94 near Mt. Elliott.  He (Taeff) approached the occupant of the first vehicle, but he did not recall her saying that her car had spun around.

Trooper Taeff further testified that, after talking to the occupant of the first vehicle, he walked back to the second vehicle, which had two occupants.  Petitioner was seated in the driver's seat, trying to start the vehicle.  He (Taeff)  gathered information from the

3

passenger as Trooper Walter made contact with the driver, whom Trooper Taeff identified at trial as Petitioner. Trooper Taeff stated that, when Petitioner exited the vehicle, he stumbled into the far right-hand lane of traffic and had to be escorted to the shoulder of the road. Trooper Taeff described Petitioner as quiet, but he said that Petitioner's speech was "very slurred" and that he appeared to be "under the influence." Trooper Taeff claimed that Petitioner had two different types of pills in his pocket and that the prescription bottle had Jac Simpson's name on it.

Geoffrey French testified as an expert in the area of forensic toxicology. He claimed that the blood specimen taken from Petitioner contained three drugs: Alprazolam, a schedule four controlled substance commonly known as Xanax; Carisprodol, a muscle relaxant known as Soma, which requires a prescription, but is not a controlled substance; and Meprobamate, which is a schedule four controlled substance, even though it is a breakdown product of Carisprodol. Mr. French explained that an individual who had ingested Soma and Xanax would exhibit side effects commonly associated with alcohol, such as unsteadiness and slurred speech.

The parties stipulated that a chemical analysis of one of the pills seized from Petitioner revealed Alprazolam (Xanax) and that the other type of pill in the prescription bottle taken from Petitioner was not a controlled substance. Petitioner represented himself at trial and did not testify, but he called Liane Garmany and Trooper Patrick Walter as witnesses.

Ms. Garmany testified on direct examination by Petitioner that Petitioner had hit the side of her car, and even though her car spun around six times, she did not hit any other cars. She also admitted that she did not know what was going on inside Petitioner's vehicle

4

when he was swerving on the road.

Trooper Walter testified on direct examination by Petitioner that, according to his and Trooper Taeff's report of the accident, Petitioner's car hit the rear, not the side, of Ms. Garmany's car. Trooper Walter also testified that it was a typical collision and that he did not see any visible injuries on Petitioner.

In his closing argument, Petitioner stated that Ms. Garmany was not a credible witness because she testified that, even though her car spun around six times on a congested highway, she did not hit another car. Petitioner argued that his swerving did not necessarily mean he was intoxicated and that he may have taken the pills after the accident and, therefore, was not intoxicated at the time of the accident. He also argued that the other occupant in his car could have been the driver. As for the possession charge, he maintained that he was on his way to Mr. Simpson's house and that there was no law against delivering a person's prescription drugs.

On August 24, 2006, the jury found Petitioner guilty, as charged, of possession of a controlled substance, Mich. Comp. Laws § 333.7403(2)(b)(ii), and operating a vehicle while under the influence of a controlled substance, Mich. Comp. Laws § 257.625(1)(a). On September 15, 2006, the trial court sentenced Petitioner as a habitual offender, fourth offense, to two concurrent terms of five to fifteen years in prison.

In an appeal as of right, Petitioner argued through counsel that the trial court erred in departing upward from the state sentencing guidelines. In a *pro se* supplemental brief, Petitioner argued that (1) his trial attorney was ineffective for failing to request appointment of an expert witness on eyewitness identification, (2) the prosecutor failed to prove all the elements of the crime, (3) the trial court erred in not instructing the jury that the prosecutor

5

must prove all elements of the crime beyond a reasonable doubt, and (4) there was insufficient evidence that he was the driver of the vehicle and under the influence of a controlled substance at the time of the accident.  The Michigan Court of Appeals affirmed Petitioner's convictions and sentences, but remanded his case so that the trial court could amend the judgment of sentence to reflect the correct citation for one of the crimes.  *See People v. Disney*, No. 273367, 2008 WL 162000 (Mich. Ct. App. Jan. 17, 2008).

In a subsequent application for leave to appeal in the Michigan Supreme Court, Petitioner alleged that (1) the prosecutor failed to prove all the elements of the controlled-substance crime, (2) his trial attorney was ineffective for failing to contact Mr. Simpson and Jill Najarian, and (3) the prosecutor failed to prove that Petitioner was the driver of the vehicle and intoxicated before the accident.  On May 27, 2008, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  *See People v. Disney*, 481 Mich. 880; 748 N.W.2d 850 (2008) (table).

### B. The First Habeas Petition and State Collateral Proceedings

In 2009, Petitioner filed his first habeas corpus petition in this District.  He alleged that (1) the police lacked probable cause to arrest him, (2) there was insufficient evidence to convict him of possessing a controlled substance, (3) his trial attorney was ineffective, and (4) he was denied counsel at trial.  United States District Judge Lawrence P. Zatkoff dismissed the habeas petition without prejudice for failure to exhaust state remedies for all the claims.  *See Disney v. Bergh*, No. 09-11385 (E.D. Mich. July 21, 2010).

Petitioner subsequently filed a motion for relief from judgment in the state trial court. He alleged in his motion that (1) Trooper Walter lacked probable cause to arrest him, (2) the state magistrate lacked probable cause to issue the search warrant, (3) the state district

6

court lacked probable cause to bind him over to circuit court, (4) the state trial court lacked jurisdiction, (5) his trial attorney was ineffective, and (6) he was denied counsel at a critical stage of the proceedings.  The trial court denied Petitioner's motion on grounds that the three "probable cause" issues could have been raised on direct appeal, the bindover gave the court jurisdiction, the court was precluded from reviewing Petitioner's ineffective-assistance-of-counsel claim, and Petitioner's claim about being denied counsel was "incomprehensible."

Petitioner raised the same six issues and two additional issues in the Michigan Court of Appeals.  The two additional issues alleged that appellate counsel was ineffective and that the prosecutor failed to prove that Petitioner possessed a controlled substance in violation of Mich. Comp. Laws § 333.7403.  The Michigan Court of Appeals denied leave to appeal on the ground that Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Disney*, No. 302386 (Mich. Ct. App. Sept. 20, 2011).  Petitioner raised all eight issues in an application for leave to appeal in the Michigan Supreme Court, which also denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D).  *See People v. Disney*, 491 Mich. 941; 815 N.W.2d 485 (2012) (table).

### C. The Current Petition

On August 29, 2012, Petitioner filed the instant habeas corpus petition, which alleges that:  (1) Trooper Walker lacked probable cause to arrest Petitioner; (2) the state magistrate lacked probable cause to authorize a search warrant; (3) the state district court lacked probable cause to bind Petitioner over to circuit court; (4) the trial court lacked jurisdiction; (5) the trial court deprived Petitioner of counsel at a critical stage; (6) trial

7

counsel was ineffective; (7) appellate counsel was ineffective; and (8) the prosecutor failed to prove that Petitioner was in possession of a controlled substance. The Court initially dismissed the petition without prejudice because Petitioner failed to either pay the filing fee or submit a proper application for leave to proceed *in forma pauperis*. *See* Opinion and Order Dismissing Case for Failure to Correct Deficiency (dkt. #10).

Petitioner subsequently asked the Court to set aside the order of dismissal and permit him to proceed *in forma pauperis*. The Court granted Petitioner's motions and re-opened this case. *See* Order dated May 28, 2013 (dkt. #18). On December 12, 2013, Respondent filed a responsive pleading, and on January 9, 2014, Petitioner filed his reply. More recently, Petitioner filed a motion to have the Court disqualify itself and a motion for reconsideration of his request for release on bond.

## II. The Pending Motions

### A. The Motion for Reconsideration

Petitioner has asked the Court to reconsider its prior orders denying him release on bond. He argues that he should be released pending a decision on his habeas petition because he was convicted of minor offenses and because the Court has taken more than a year to adjudicate his petition. Petitioner asserts that he has served nine years of his sentence and that the only reason the Michigan Parole Board refuses to release him on parole is because he will not admit guilt.

Petitioner's request for release pending a decision on his habeas petition is moot, given this decision to deny his habeas petition. The motion also is untimely under the Court's Local Rules because it was filed more than fourteen days after entry of the last order denying release on bond. L.R. 7.1(h)(1) (E.D. Mich. July 1, 2013).

8

The delay in this case, moreover, has not been extraordinarily long, and Petitioner has not presented "substantial questions" in his habeas petition, nor shown that "some circumstance mak[es] []his application exceptional and deserving of special treatment in the interests of justice." *Aronson v. May*, 85 S. Ct. 3, 5 (1964). For all these reasons, Petitioner's motion for reconsideration (dkt. #33) is **DENIED**.

### B. The Motion for Disqualification

In his motion to have the Court disqualify itself, Petitioner alleges that the Court is biased. To support this allegation, Petitioner points to the delayed rulings on his motions for extension of time. Petitioner correctly observes that Court took several months to rule on two of his motions for extension of time, but granted Respondent's motion for an enlargement of time in one day.

In *United States v. Adams*, 722 F.3d 788 (6th Cir. 2013), the court explained that

> [f]ederal judges "shall disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned" or "[w]here [they] have] a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a), (b)(1). "A district court judge must recuse himself where a reasonable person with knowledge of the all (sic) facts would conclude that the judge's impartiality might reasonably be questioned." *[United States v.] Dandy,* 998 F.2d [1344, 1349 (6th Cir. 1993)] (quotation marks omitted).

*Id.* at 837.

This Court has no personal bias or prejudice against Petitioner and no personal knowledge of disputed evidentiary facts. The Court's delay in ruling on Petitioner's motions is due to its congested docket. The prompt ruling on Respondent's motion for extension of time likely was due to the fact that Respondent submitted a proposed order with its motion and because there were no additional issues to take into consideration. *Cf.*

9

Petitioner's motion for extension of time (dkt. #17), filed at the same time as his motion to set aside the opinion and order dismissing his case and denying bond (dkt. #14).

A reasonable person with knowledge of the facts would not question the Court's impartiality in this case. The Court therefore **DENIES** Petitioner's motion for the Court to disqualify itself (dkt. #34). The Court will proceed to address Petitioner's habeas claims, using the following standard of review.

### III. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part

II).  "[A] federal habeas court may not issue the writ simply because that court concludes

in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable."  *Id.* at 411.

The AEDPA "imposes a 'highly deferential standard for evaluating state-court

rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court

decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)

(*per curiam*)."  *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A state court's determination that

a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 786

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas

corpus, a state prisoner must show that the state court's ruling on a claim "was so lacking

in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement."  *Id.* at 786-87.

## IV. Analysis

### A. Probable Cause to Arrest and to Search (claims one and two)[1]

---

[1]  Respondent argues that Petitioner's first claim (no probable cause to arrest) and Petitioner's seventh claim (ineffective assistance of appellate counsel) are procedurally defaulted.  The Supreme Court has defined a "procedural default" as "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  A procedural default "is not a jurisdictional matter," *id.*, and to obtain relief on claims that were procedurally defaulted in state court, a federal habeas petitioner "must establish cause and prejudice for the defaults" and "also show that the claims are meritorious."  *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010).  This Court "cut[s]

11

Petitioner alleges that Trooper Patrick Walter lacked probable cause to arrest him and that the state magistrate lacked probable cause to sign a warrant for the taking of a blood sample from Petitioner. Petitioner contends that Trooper Walter arrived at the crime scene after the accident and did not witness Petitioner operating the vehicle; instead, Trooper Walter merely observed Petitioner sitting in the driver's seat of the vehicle.

### 1. *Stone v. Powell*

Petitioner raised his "probable cause" claims in his motion for relief from judgment and the subsequent appeal. The trial court was the only court to address the claims in a reasoned opinion. It determined that the claims were procedurally defaulted because Petitioner failed to show "good cause" for not raising the claims on direct appeal and "actual prejudice" from the alleged irregularities.

This Court rejects Petitioner's claims because he is raising Fourth Amendment issues, and the Supreme Court has held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnote omitted). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013), *petition for cert. filed*, (U.S. Apr. 3, 2014) (No. 14-6114).

---

to the merits here, since the cause-and-prejudice analysis adds nothing but complexity to the case." *Id.*

In Michigan, a defendant may challenge the legality of a search and seizure in a motion to suppress evidence, which may be brought before or even during trial. *People v. Ferguson*, 376 Mich. 90, 94-95; 135 N.W.2d 357, 359 (1965). Petitioner could have raised his Fourth Amendment claims in a motion to suppress evidence either before or during trial, and he ultimately raised the issues in his motion for relief from judgment and on appeal from the trial court's decision on his motion. The state courts rejected Petitioner's Fourth Amendment claims. "That suffices to preclude review of the claim[s] through a habeas corpus petition under *Stone v. Powell*." *Good*, 729 F.3d at 640; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (stating that, because the petitioner "had ample opportunities to present [his] claims in state court," he was precluded from obtaining habeas relief.

### 2. On the Merits

Petitioner's claims lack merit even assuming that they are cognizable on habeas review. The Fourth Amendment, applicable to the States through the Fourteenth Amendment to the United States Constitution, *Bailey v. United States*, 133 S.Ct. 1031, 1037 (2013), provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

Whether an "arrest was constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had

13

reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Three eyewitnesses in this case identified Petitioner as the person seated in the driver's seat of the car that rear-ended Ms. Garmany's car. The evidence also established that Petitioner was under the influence of a controlled substance immediately before and shortly after the accident. He was swerving before the accident, and after the accident his eyes were glassy, his speech was slurred, he had trouble maintaining his balance, and he was unable to correctly complete the verbal sobriety tests.

As for the possession charge, Petitioner pulled a prescription pill bottle from his pocket while Trooper Walter was questioning him. Although he informed Trooper Walter that he was delivering the drugs to Mr. Simpson, the prescription bottle contained two types of pills. This was an indication that Petitioner was not delivering a prescription medication to someone. The Court concludes that there was probable cause to arrest Petitioner and to charge him with possession of a controlled substance and driving under the influence of a controlled substance.

As for the blood sample taken from Petitioner following his arrest, it was authorized by a warrant. This was consistent with Supreme Court cases holding that the Fourth Amendment generally requires police officers to obtain a warrant in impaired-driving cases before a blood sample is drawn. *See Missouri v. McNeely*, 133 S. Ct. 1552, 1561 (2013). And because Petitioner's condition at the scene of the accident suggested that he had been driving under the influence of alcohol or a controlled substance, probable cause existed to issue the warrant. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243

14

n. 13 (1983).

To summarize, there was probable cause to arrest Petitioner, to seize the pills in his possession, and to take a blood sample from him.  His Fourth Amendment claims therefore lack merit even if the claims were not barred by *Stone v. Powell*.

### B.  Probable Cause to Transfer Jurisdiction to the State Circuit Court (claim three)

Petitioner alleges that the state district court lacked probable cause at the preliminary examination to transfer jurisdiction to Wayne County Circuit Court.  According to Petitioner, there was insufficient evidence that he was operating a vehicle while under the influence of a controlled substance and that he illegally possessed a controlled substance.  Petitioner maintains there was no evidence that he had actual physical control of the vehicle or that he knowingly possessed a controlled substance.

Petitioner raised this claim in his motion for relief from judgment and subsequent appeal.  The trial court rejected the claim in part because Petitioner failed to raise the claim on direct appeal.  The trial court pointed out that Petitioner previously raised the issue in a motion to quash, which the trial court denied after concluding there was probable cause to bind Petitioner over on the charges.  The trial court also stated that the issue was moot because the jury found Petitioner guilty of the crimes.

This Court finds no merit in Petitioner's claim because he had no constitutional right to a probable cause determination at a preliminary examination, *Gerstein v. Pugh*, 420 U.S. 103, 119, 123, 125 n. 26 (1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965), and an "illegal arrest or detention does not void a subsequent conviction."  *Pugh*, 420 U.S. at 119.  Consequently, the state district court's decision to transfer jurisdiction to the state

circuit court on the charged offenses is not a basis for habeas corpus relief.

Furthermore, in Michigan, the prosecutor "need present only enough evidence on each element of the charged offense to lead 'a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of [the defendant's] guilt.' "  *People v. Perkins*, 468 Mich. 448, 452; 662 N.W.2d 727, 730 (2003) (quoting *People v. Justice*, 454 Mich. 334, 344; 562 N.W.2d 652, 657 (1997)).  Trooper Patrick Walter testified at the preliminary examination that, when he approached Petitioner at the accident scene, Petitioner was seated in the driver's seat, attempting to start his vehicle.  Petitioner informed Trooper Walter that he hit the vehicle in front of him when the vehicle braked and that he was unable to stop.  Petitioner's speech was slurred, his movements were lethargic, and he displayed poor balance.  His eyes were glassy, and he was unable to correctly complete two sobriety tests involving the alphabet and numbers.  Petitioner appeared to be under the influence of some sort of substance, although Trooper Walter was unable to say with any certainty whether Petitioner injected the controlled substance before the accident.  Trooper Walter did not smell anything on Petitioner, and he concluded that Petitioner was possibly under the influence of a controlled substance.

Trooper Walter also testified at the preliminary examination that, when he asked Petitioner for his license, Petitioner was unable to produce it.  Eventually, Petitioner put his hand in a pocket of his jacket and produced a bottle containing prescription pills.  The bottle had the name "Jac Simpson" on it, and even though Petitioner claimed to be transporting the medication to Mr. Simpson, the bottle appeared to contain two different types of pills.

The parties stipulated at the examination that (1) a blood sample taken from

16

Petitioner revealed the presence of Alprazolam, Carisprodol, and Meprobamate and (2) an analysis of the pills in evidence revealed the presence of the controlled substance Alprazolam. This stipulation and Trooper Walter's testimony provided sufficient evidence to establish that Petitioner possessed a controlled substance without a valid prescription and that he was operating a vehicle while under the influence of a controlled substance. There was probable cause to bind him over for trial.

### C. The Trial Court's Jurisdiction (claim four)

Petitioner asserts that the state trial court failed to hold a hearing to determine whether he had two valid prior convictions for operating under the influence. Petitioner argues that he was not represented by counsel during the prior proceedings for operating under the influence and, therefore, his prior convictions were invalid. Absent the two prior convictions, he claims that the charge against him was only a misdemeanor and, therefore, the state circuit court lacked jurisdiction.[2]

The state trial court held on collateral review of Petitioner's convictions that the bindover to circuit court gave the court jurisdiction. No state court directly addressed the validity of Petitioner's prior convictions. Nevertheless, the contention that the state trial court lacked subject matter jurisdiction is meritless because a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not

---

[2] State circuit courts do not have jurisdiction of criminal cases involving only misdemeanors. *People v. Bidwell*, 205 Mich. App. 355, 358; 522 N.W.2d 138, 139 (1994). It was Petitioner's two prior convictions for operating a vehicle under the influence of alcohol or a controlled substance that elevated the charge incurred on February 26, 2005, to a felony. *See* Mich. Comp. Laws § 257.625(9)(c) (stating that, "[i]f the violation occurs after 2 or more prior convictions . . . the person is guilty of a felony . . . ").

17

the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).

Furthermore, Petitioner has failed to support his claim with documentation showing that he was not represented by counsel during the prior misdemeanor proceedings and that he did not waive counsel during those proceedings.  Even if he lacked counsel during the prior misdemeanor proceedings and did not waive counsel, the convictions were valid if they did not result in terms of imprisonment. *Scott v. Illinois*, 440 U.S. 367, 373-74 (1979). Petitioner had not stated what his punishment was for the prior convictions, and even assuming that he was incarcerated for the prior convictions, a prior, uncounseled misdemeanor conviction can be used to enhance punishment for a subsequent conviction. *Nichols v. United States*, 511 U.S. 738, 748-49 (1994).  Petitioner's prior misdemeanor convictions for operating a vehicle under the influence were used to enhance the charge and punishment for his driving offense in the case under attack here.  Therefore, he is not entitled to habeas relief on the basis of his jurisdictional claim.

### D.  Deprivation of Counsel (claim five)

Petitioner alleges that the state trial court deprived him of trial counsel.  He claims that he informed the state trial court by letter that he wanted another attorney because his attorney refused to investigate potential defense witnesses.  According to Petitioner, the state trial court called him to the bench on the first day of trial and told him that he could not have another lawyer.  Petitioner claims that this was a complete denial of counsel at a critical stage.  On state collateral review, however, the trial court found Petitioner's claim "incomprehensible," because Petitioner was represented by counsel during trial and at sentencing.

"It is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who

18

faces incarceration the right to counsel at all critical stages of the criminal process.'" *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (*per curiam*) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004)).  A trial obviously is a "critical stage" of the criminal process because it holds "significant consequences for the accused."  *Bell v. Cone*, 535 U.S. 685, 695-96 (2002).

Petitioner opted to represent himself at trial, and he had standby counsel, who assisted him.  The trial court, moreover, described the letter he received from Petitioner as stating that Petitioner wanted to represent himself.  On the first day of trial, Petitioner confirmed on the record that he wanted to represent himself, knowing that he would be required to follow the court rules and that, if convicted as a habitual felony offender, he could be sentenced to life imprisonment.  When the trial court asked Petitioner whether he wanted to retain his present attorney as standby counsel, Petitioner responded that it made no difference to him.  He then assured the trial court that he was not taking any prescription medication, that he was not under the influence of alcohol, and that he had never been diagnosed or treated for any psychiatric disorders.  The trial court concluded that Petitioner's assertion of his right to self representation was unequivocal, that he was competent to waive his right to counsel, and that he sincerely wished to proceed on his own.  The court nevertheless ruled that current counsel should remain in court as standby counsel.  (Trial Tr. Vol. I, 4-7, Aug. 23, 2006.)

Defense counsel subsequently served as standby counsel and assisted Petitioner on occasion during the trial.  Further, Petitioner's waiver of appointed counsel appears to have been a " 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.' "  *Tovar*, 541 U.S. at 81 (quoting *Brady v. United States*, 397 U.S. 742, 748

19

(1970)). As such, there is no merit in Petitioner's claim that he was denied counsel at trial. Although Petitioner contends that the trial court should have questioned him about his request for substitution of counsel and given him a reason for the denial of substitute counsel, he had no right to appointed counsel of choice. *See Kaley v. United States*, 134 S.Ct. 1090, 1107 (2014) (stating that "the right to counsel of choice is . . . not absolute" and that "[a] defendant has no right to choose counsel he cannot afford"); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (stating that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them"). The Court therefore declines to grant relief on Petitioner's claim that he was denied counsel at a critical stage of the proceedings.

### E.  Trial Counsel (claim six)

Petitioner alleges that his trial attorney was ineffective because the attorney failed to investigate any witnesses.  The trial court rejected this claim during post-conviction proceedings on the mistaken basis that the issue was raised and rejected by the Michigan Court of Appeals on direct appeal.  On direct appeal, the issue was whether Petitioner's attorney was ineffective for failing to request an expert on the unreliability of eyewitness testimony.  Petitioner has not made an affirmative showing that an expert's testimony would have likely affected the outcome of his trial.  *See Malcum v. Burt*, 276 F.Supp. 2d 664, 679 (E.D. Mich. 2003).  A defense counsel is not required to call an expert witness about the problems with eyewitness testimony.  *See Perkins v. McKee*, 411 F. App'x. 822, 833 (6th Cir. 2011)(A case involving identification issues)).  Petitioner's claim has no merit in any event, because Petitioner represented himself at trial.  "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted

20

to a denial of 'effective assistance of counsel.' " *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975).

### 1.  Clearly Established Law

Even if Petitioner did not waive his claim about trial counsel by representing himself, he can prevail on his claim only if he shows that his attorney's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*.

The "prejudice" prong of the *Strickland* test requires demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693).

Petitioner claims that his attorney should have investigated two witnesses who would have helped his defense.   Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  "[F]ailure to conduct a reasonable investigation into . . . 'a known and potentially important witness' violate[s] [a defendant's] Sixth Amendment right to the effective assistance of counsel." *Id*. at 259 (quoting

21

*Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987)).

### 2. Application

Petitioner argues that his attorney should have contacted Jill Najarian, who was the passenger in his car at the time of the accident, and Jac Simpson, whose name was on the prescription pill bottle that Petitioner possessed at the time. Petitioner alleges that Ms. Najarian would have testified that she was driving his vehicle at the time of the accident and that Petitioner was not under the influence of any intoxicating substance until after the accident. Petitioner maintains that Mr. Simpson would have testified that he authorized Petitioner to pick up his prescription from the pharmacy. If trial counsel had investigated these two witnesses, Petitioner argues the outcome of the trial would have been different.

Ms. Garmany testified that Petitioner was driving the car that collided with her car (Trial Tr. Vol. I, 120-21, Aug. 23, 2006), and the two state troopers who testified at Petitioner's trial testified that Petitioner was seated in the driver's seat when they approached him shortly after the collision. (*Id.* at 134 (Trooper Walter) and 151-52 (Trooper Taeff)). Petitioner himself admitted to Trooper Walter that, when the vehicle in front of him braked, he was unable to stop and subsequently rear-ended the vehicle. (*Id.* at 135.) Given this testimony, there is not a reasonable probability that the outcome of the trial would have been different if defense counsel had investigated and produced Ms. Najarian to testify that she was driving the car, which hit Ms. Garmany's car.

As for Jac Simpson, Petitioner has not established that Mr. Simpson was willing and available to testify that he authorized Petitioner to pick up his prescription. Even if Simpson had so testified, the testimony likely would not have persuaded the jury to acquit Petitioner because there was more than one kind of pill in the prescription bottle, and there was

22

testimony that Petitioner's blood contained the controlled substance found in the bottle. This suggested that Petitioner had ingested the controlled substance and was not delivering the pills to someone else.

Petitioner has failed to demonstrate a reasonable probability that the result of his trial would have been different if his attorney had investigated and produced Mr. Simpson and Ms. Najarian.  The Court therefore declines to grant relief on Petitioner's ineffective-assistance-of-counsel claim.

### F. Appellate Counsel (claim seven)

Petitioner alleges that his appellate attorney was ineffective for failing to raise his other issues on direct appeal.  None of the state courts addressed the merits of this claim.

Although an appellate attorney's failure "to raise an issue on appeal can amount to constitutionally ineffective assistance," *Jalowiec v. Bradshaw*, 657 F.3d 293, 321 (6th Cir. 2011), *cert. denied*, 133 S. Ct. 107 (2012), an attorney is not required to raise every non-frivolous issue suggested by the defendant.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983). To demonstrate that appellate counsel was ineffective, Petitioner must show that (1) his attorney unreasonably failed to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability he would have prevailed on appeal if his appellate attorney had raised the issues.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland* , 466 U.S. at 687-91, 694); *Moore v. Mitchell*, 708 F.3d 760, 792 (6th Cir.), *cert. denied*, 134 S. Ct. 693 (2013).

For the reasons given in the discussion above, the issues that Petitioner claims his attorney should have raised on appeal lack merit, and there is not a reasonable probability that Petitioner would have prevailed on appeal had counsel raised the issues.  An appellate

attorney is not ineffective for failing to raise a meritless issue. *Shaneburger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Habeas relief, therefore, is not warranted on Petitioner's claim about appellate counsel.

### G.  The Sufficiency of the Evidence (claim eight)

In his eighth and final claim, Petitioner alleges that the prosecutor failed to prove that he possessed a controlled substance in violation of Mich. Comp. Laws § 333.7403. Petitioner claims that he had a legal right to possess Jac Simpson's prescription and, because the prosecution presented no evidence that the prescription was illegally obtained, the Court must assume that the prescription was legal. The Michigan Court of Appeals addressed this issue on direct appeal and concluded that sufficient evidence existed to support Petitioner's conviction.

### 1.  Clearly Established Federal Law

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted) (emphases in original).

24

### 2. Application

"The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16). Petitioner was charged with violating Mich. Comp. Laws § 333.7403, which reads in relevant part:

> (1) A person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue, or a prescription form unless the controlled substance, controlled substance analogue, or prescription form was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.

Simply stated, the statute "proscribes the knowing or intentional possession of a controlled substance unless obtained directly through a valid prescription or valid doctor's order." *People v. Hartuniewicz*, 294 Mich. App. 237, 242; 816 N.W.2d 442, 446 (2011). To prove this crime, the prosecution is required to prove (1) that the substance in question was a controlled substance, (2) that the defendant possessed some amount of the controlled substance, (3) that the defendant was not authorized to possess the controlled substance, and (4) that the defendant knowingly possessed the controlled substance. *Id.*, 294 Mich. App. at 248; 816 N.W.2d at 448. Once the prosecution presents a prima facie case of knowing or intentional possession of a controlled substance, "the defendant bears the burden of affirmatively defending the action with proof of a valid prescription." *Id.*, 294 Mich. App. at 245; 816 N.W.2d at 447.

When Trooper Walter questioned Petitioner at the scene of the accident, Petitioner produced a prescription drug bottle containing two different kinds of pills. (Trial Tr. Vol. I, 137-38, Aug. 23, 2006.) Petitioner stipulated at trial that an analysis of the pills revealed

25

the presence of Alprazolam (Xanax). (*Id.* at 178-79.) And he informed Trooper Walter that he was delivering the medication to Mr. Simpson. (*Id.* at 138.) The totality of this evidence satisfies the first, second, and fourth elements of the offense (knowing possession of the controlled substance Xanax).

The remaining question is whether Petitioner was authorized to possess Xanax. He claims that he was entitled to possess the pills, but he did not carry his burden at trial of proving that he had a valid prescription for the pills or that he was authorized to deliver the drugs to Mr. Simpson. And the prosecution was not obligated "to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Moreland v. Bradshaw*, 699 F.3d 908, 921 (6th Cir. 2012) (citing *Jackson*, 443 U.S. at 326), *cert. denied*, 134 S. Ct. 110 (2013).

The forensic scientist, moreover, testified that Petitioner had Xanax in his blood (Trial Tr. Vol. I, 166-67, Aug. 23, 2006), and Trooper Walter testified that the pill bottle had two different kinds of pills in it (*id.* at 138). The jury could have inferred from these facts that Petitioner had ingested the Xanax and that he was not merely delivering a prescription to Mr. Simpson. A rational juror could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner possessed a controlled substance in violation of Mich. Comp. Laws § 333.7403.

The state appellate court's determination that there was sufficient evidence of Petitioner's guilt was objectively reasonable. Petitioner therefore has no right to relief on the basis of his sufficiency-of-the-evidence claim.

## V. Conclusion

The state courts' rejection of Petitioner's claims was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any

26

possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.  Accordingly, the petition for writ of habeas corpus is **DENIED**.

## VI. Regarding a Certificate of Appealability and Leave to Proceed *In Forma Pauperis* on Appeal

Before Petitioner may appeal this court's decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong, nor conclude that the issues deserve encouragement to proceed further.  The Court therefore declines to grant a certificate of appealability.  Petitioner nevertheless may proceed *in forma pauperis* on appeal without further authorization if he appeals this decision, because he was granted leave to proceed *in forma pauperis* in this Court, and an appeal could be taken in good faith.  Fed. R. App. P. 24(a)(3)(A).

## VII. ORDER

For the reasons set forth above,

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED** and this action is **DISMISSED** with prejudice.

27

IT IS FURTHER ORDERED that Petitioner's motion for reconsideration (dkt. #33) is **DENIED**.

IT IS FURTHER ORDERED that Petitioner's motion for the Court to disqualify itself (dkt. #34) is **DENIED**.

IT IS FURTHER ORDERED that a Certificate of Appealability will NOT be issued, but Petitioner may proceed *in forma pauperis* on appeal.


Dated:  November 25, 2014                  S/Denise Page Hood_____
                                           Denise Page Hood
                                           United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 25, 2014, by electronic and/or ordinary mail.

                                           S/LaShawn R. Saulsberry_____
                                           Case Manager

28